[redacted]

National City Bank of New York, demandante y apelado, *v.* Fuentefría & Arroyo, demandada y apelante.

Núm. 6965.—*Sometido:* Noviembre 18, 1936. *Resuelto:* Noviembre 3, 1937.

[redacted]

*Emilio S. Belaval*, abogado de la apelante; *Fiddler, Córdova & McConnell*, y *J. M. Morales*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

El National City Bank of New York inició esta acción basada en dos giros pagaderos a la orden del American Colonial Bank y endosados por éste al demandante. Ambos giros habían sido aceptados por Fuentefría & Arroyo como librada. La única cuestión ante nos es si estas obligaciones quedaron extinguidas por novación.

El artículo 1158 del Código Civil, ed. 1930, provee:

"Para que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles."

Uno de los giros fué librado por R. A. Muñoz y el otro por M. Berríos & Co. y R. A. Muñoz. Más tarde Muñoz y su esposa, Elvira Fuentefría, otorgaron hipoteca para garantizar el pago de $85,307.25 que Muñoz aceptó ser la totalidad de su deuda con el American Colonial Bank, procedente de préstamos directos y pagarés y giros descontados según liquidación aceptada de mutuo acuerdo entre él y el banco. Muñoz se comprometió a satisfacer dicha cantidad en el término de un año a partir de la fecha de la hipoteca.

La hipoteca se constituyó en 29 de junio de 1929. Uno de los giros venció en julio 23 del mismo año. En agosto 12, 1929, se pagaron intereses y el giro fué prorrogado hasta agosto 23. El otro giro venció en 6 de agosto de 1929; se pagaron los intereses en agosto 13, y el giro fué prorrogado hasta agosto 23 del mismo año.

La hipoteca no contenía declaración expresa alguna respecto a la amortización de obligaciones preexistentes. La hipoteca y los dos giros ante nos no son "incompatibles de todo punto." La librada era, por supuesto, responsable en primer lugar del importe total de ambos giros. La obligación de Muñoz como librador del primer giro y de Muñoz y Berríos & Co. como libradores del segundo, era una responsabilidad secundaria. Podría admitirse que Muñoz, mediante

su promesa incondicional de pagar en el término de un año el importe total de ambos giros, renunció (por lo menos en lo que a él y al banco se refería) a cualquier beneficio proveniente de su obligación secundaria, y asumió en lugar de ésta una obligación mancomunada y solidaria. También se comprometió a pagar intereses sobre la totalidad de su deuda. La librada no fué parte en la hipoteca y no estaba obligada por el pacto del deudor hipotecario de pagar intereses al 9 por ciento a partir de la fecha de la hipoteca. El reconocimiento de su deuda al banco hecho por el librador por el importe total de ambos giros y su promesa de pagar el mismo con intereses al 9 por ciento dentro de un año no relevaron a la librada de su obligación de pagar dicha cantidad a su vencimiento de acuerdo con los términos de los dos giros aceptados, con intereses al tipo legal del 6 por ciento anual desde las fechas de los respectivos vencimientos de dichos giros. No afectó en modo alguno la obligación de la librada para con el banco. La hipoteca no estipulaba nada respecto a la cesión, abandono o cancelación por el banco de alguna deuda anterior. No conllevaba ni envolvía necesariamente una renuncia por parte del banco de su derecho a exigir el cobro de deudores mancomunados y solidarios distintos a Muñoz mediante litigio contra tales deudores fundado en los pagarés o giros, a pesar de la responsabilidad mancomunada y solidaria de Muñoz de pagar tales pagarés o giros. El banco, por lo menos, no lo entendió así. Después que ambos giros estaban vencidos y más de un mes después de la ejecución de la hipoteca, alguien hizo un pago de intereses y el banco prorrogó ambos giros hasta el 23 de agosto de 1929. Muñoz declaró como testigo de la demandada que él estaba "completamente seguro" que el banco le cargó en cuenta estos giros y que los mismos estaban "incluídos en la liquidación." Aparte del hecho de que dichos giros estaban incluídos en la llamada liquidación, no dió razón alguna en cuanto a su creencia de que éstos le habían sido cargados en cuenta. No basta la mera conjetura de que habían sido cargados en esta

forma. De tener algún valor probatorio, éste fué destruído por el hecho establecido de que el banco retuvo posesión de los giros, aceptó el pago de intereses sobre los mismos, concedió una prórroga para el pago del principal y más adelante endosó y envió ambos giros a otro banco, el aquí demandante. Evidentemente, el banco consideró la hipoteca, en substancia y efecto, como una garantía adicional para el pago de la deuda anterior, y no como una novación de las obligaciones ya existentes, incluyendo las de otros deudores que no eran Muñoz. El documento estaba claramente sujeto a tal interpretación, porque, como hemos dicho, no era "incompatible de todo punto" con las obligaciones preexistentes de otros deudores tales como las asumidas por Fuentefría & Arroyo.

Una cuidadosa lectura de la opinión en el caso de *Guerra* v. *American Colonial Bank,* 21 Fed. (2) 56, en que se basa el apelante, bastará para distinguir dicho caso del que ahora nos ocupa.

Un caso algo más aplicable puede hallarse en 123 Jurisprudencia Civil, 543. En él la Corte Suprema de España decidió que cierta hipoteca equivalía a la novación de un contrato anterior porque el término para pagar la obligación preexistente había sido prorrogado y la obligación de los deudores hipotecarios, firmantes de un giro, quedaba sustituída, independientemente de la hipoteca en sí, por la obligación del librado mencionado en el mismo. En el presente caso, como hemos demostrado, la obligación asumida por la librada no fué prorrogada por los términos de la hipoteca. La obligación asumida por los deudores hipotecarios no había sido sustituída por la obligación preexistente previamente asumida por la librada. No hubo sustitución de un deudor por otro. Nada impedía que el banco demandase a la librada en cobro de su obligación tan pronto ésta venciese en la fecha especificada en el giro. Si la Corte Suprema de España estuvo acertada o equivocada en las circunstancias del caso por ella decidido, el *ratio decidendi* del mismo no resuelve el que está ahora ante nos.

*La sentencia apelada debe ser confirmada.*

Los Jueces Presidente Señor del Toro y Asociado Señor Córdova Dávila no intervinieron.